UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
_____ DIVISION

CASE NO.:

Henkel Corporation,

      Plaintiff,

vs.

TSE Industries, Inc.,

      Defendant.

_____/

**COMPLAINT FOR
BREACH OF CONTRACT,
BREACH OF WARRANTIES,
AND INDEMNIFICATION AND
DEMAND FOR JURY TRIAL**

## PARTIES

1.      Plaintiff, Henkel Corporation ("Henkel"), is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at One Henkel Way, Rocky Hill, Connecticut 06067.

2.      Henkel has an office at 10 Finderne Avenue, Bridgewater, New Jersey.

3.      Defendant, TSE Industries, Inc. ("TSE"), is a corporation organized and existing under the laws of the state of Florida with a principal place of business in Clearwater, Florida.

## JURISDICTION AND VENUE

4.      This Court has personal jurisdiction over TSE because it transacts business in the Middle District of Florida.

5.      This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is a complete diversity of citizenship between Henkel and TSE and the amount in controversy exceeds $75,000, exclusive of costs and interests.

6.      Venue of this action is proper in the Middle District of Florida because the claims alleged in this action arose in the Middle District of Florida, and the Defendant may be found and served in the Middle District of Florida.

## INTRODUCTION

7.      Henkel is a leading commercial distributer, manufacturer and supplier of hot melt adhesives among other products.

8.      Henkel has over a decade-long business relationship with TSE as one of its toll manufacturers of certain hot melt adhesive products.

9.      In 2014, Henkel contracted with TSE to manufacture and supply Technomelt PUR 798A reactive hot melt adhesive ("798A Adhesive").

10.     The contract contained specifications, warranties and an indemnification provision.

11.     As part of the supply chain, Henkel sold 798A Adhesive to various recreational vehicle ("RV") manufacturing customers.

12.     The 798A Adhesive is basically a glue substance that the RV manufacturing customers used to secure side paneling to its RVs.

13.     TSE knew or should have known that Henkel sold the 798A Adhesive to RV manufacturers for its specific application.

14.     TSE supplied the 798A Adhesive to Henkel, and Henkel provided the 798A Adhesive to its customers for years.

15.     During 2016, Henkel received two defective batches of 798A Adhesive manufactured by TSE, batches EFD420 and AFD431 (hereinafter, referred to as "Defective Batches").

16.     Without knowledge of or reason to know of any defect, Henkel sold 798A Adhesive from the Defective Batches to several customers for its specific application.

17.     Henkel began to receive complaints from its customers that 798A Adhesive, the glue that was used to secure paneling to the side of RVs, failed, resulting in delamination.

18.     Thereafter, Henkel learned of many RVs that were affected by the Defective Batches.

19.     Methylene diphenyl isocyanate ("MDI") and the amount required to create 798A Adhesive is part of the formulation by which TSE warranted to manufacture.

20.     After extensive analysis, it was determined that the root cause of the delamination was the result of an undercharge of MDI to the Defective Batches during TSE's manufacturing process.

21.     To date, Henkel has paid out extensive compensation in excess of $3,000,000.00 for the delamination and continues to do so.

22.     Henkel demands indemnification and seeks damages for TSE's breach of contract and several warranties.

**FACTUAL BACKGROUND**

23.     Henkel entered into a Manufacturing and Supply Agreement with TSE on February 1, 2014 ("Initial Agreement").[1]

24.     Pursuant to this Initial Agreement, TSE was to manufacture 798A Adhesive for Henkel for a period of three years (2/1/14 – 1/31/17).

---

[1] Please see attached Manufacturing and Supply Agreement filed herewith as Exhibit A. This Manufacturing and Supply Agreement is filed without exhibits due to confidential and sensitive information. There is no prejudice to Defendant as Defendant is a party to the Manufacturing and Supply Agreement and has a copy of the same. Indeed, if required however, Plaintiff will file the Manufacturing and Supply Agreement and all exhibits under seal.

25.     On November 17, 2016, the parties amended the Initial Agreement ("First Amended Agreement").  The new contract extended the length of the Initial Agreement and changed the payment terms.[2]

26.     While the Initial Agreement was in effect, Henkel's customers began experiencing significant issues concerning defective 798A Adhesive, resulting in delamination.

27.     In response to customers' claims that Henkel's 798A Adhesive was defective, Henkel initiated an investigation.

28.     Upon information and belief, on or about October 5, 2016, TSE began its own investigation into the root cause of the delamination.

29.     Upon information and belief, on or about November 10, 2016, TSE determined that the root cause of the Defective Batches was an inadequate MDI system.

30.     As a result of the Defective Batches manufactured and supplied by TSE, Henkel compensated its customers for their damages.

31.     The defect with both Defective Batches was latent.

32.     Pursuant to agreement, TSE promised to indemnify Henkel for claims, losses and expenses related to the Defective Batches.

33.     Henkel provided TSE with formal notification of the product defect and resultant delamination issues pursuant to the Initial Agreement.

34.     On or about April 24, 2017, Henkel representative Simon Mawson met with TSE President Richard Klingel. During this meeting, Henkel notified TSE of the issues with the

---

[2] Please see attached First Amended Agreement filed herewith as Exhibit B.  This First Amended Agreement is filed without exhibits due to confidential and sensitive information. There is no prejudice to Defendant as Defendant is a party to the First Amended Agreement and has a copy of the same.  Indeed, if required however, Plaintiff will file the First Amended Agreement and exhibits under seal.

product's performance, the customers' claims that had been made for the alleged defective 798A Adhesive, and put TSE on notice of Henkel's intent to recoup some of the payments it had made to its customers based on the Defective Batches.

35.     On or about April 28, 2017, TSE sent a formal letter to Henkel expressly denying any responsibility for the Defective Batches and rejecting TSE's contractual indemnification duties.

36.     Specifically, TSE maintained that it fully performed and fulfilled its obligations under the Initial Agreement because the Defective Batches met the Specifications set forth by Henkel, the only standard – as alleged by TSE – to which the product should be judged.

37.     TSE's denial of responsibility ignored the warranties and representations contained within the Initial Agreement and the parties' course of dealing.

38.     Despite repeated demands, TSE has failed and refused to indemnify Henkel as per the terms of the agreement.

39.     In total, millions of dollars in claims for the Defective Batches have been paid by or on behalf of Henkel.

40.     TSE has failed to indemnify Henkel with regard to these claims.

**Henkel and TSE Entered into Binding and Controlling Agreements**

41.     As stated above, the parties entered into the Initial Agreement on February 1, 2014.  Throughout Henkel and TSE's business relationship, the agreement was amended and additional indemnification terms were sent by Henkel to TSE in Henkel's purchase orders.

42.     Regardless of the amendments and similar indemnification clause in Henkel's purchase orders, per the express language in the Initial Agreement, the controlling indemnification terms are those contained within the Initial Agreement.

43. TSE expressly agreed to the indemnification terms set forth in the Initial Agreement and never proposed, requested, or sent competing terms.

44. The Initial Agreement dated February 1, 2014 expressly provided:

> 2. **Specifications, Quality, Title and Ability to Manufacture; Amended Specification.** (a) _TSE represents and warrants that_ (i) all Products manufactured, packaged and delivered by TSE will meet the specifications set forth in Exhibit A attached hereto (the "Specifications"), _(ii) the Products will be of good and merchantable quality_, _(iii) it has the necessary expertise and equipment to manufacture_, handle, package and ship the Products and (iv) HENKEL shall receive good and marketable title to the Products free from any claims, liens or encumbrances.
>
> \* \* \* \* \*
>
> 13. **Indemnification.** (a) TSE agrees to defend, indemnify, and hold harmless HENKEL, its agents or employees from and against all claims, actions, judgments, losses and expenses, including attorney's fees, sustained or incurred by HENKEL, its agents or employees which arise or result from (1) the performance, failure to perform or improper performance of work under this Agreement by TSE or any other breach by TSE of the terms and provisions of this Agreement, (2) TSE's receipt, possession, handling, processing, manufacturing, packaging or shipment of any raw materials, intermediates and/or the Products, (3) the failure of any Product to meet the Specifications, (4) any violation or alleged violation by TSE of any federal, state, or local statutes, ordinances, orders, rules, regulations or directives applicable to the receipt, possession, handling, processing, manufacturing, packaging or shipment of the Products or any raw materials or intermediates used in the manufacture of the Product or the disposal of any waste or by-product arising or resulting from the manufacture of the Products, (5) any negligent or willful act or omission of TSE, its employees, subcontractors or agents, or (6) the generation, handling, storage, treatment or disposal of any solid or liquid waste or by-products arising or resulting from the manufacture of the Products pursuant to the terms of this Agreement.
>
> (b) HENKEL agrees to defend, indemnify and hold TSE, its agents or employees harmless from and against all claims, actions, judgments, losses and expenses, including attorney fees, sustained or incurred by TSE, its agents or employees which arise

or result from (1) any breach by HENKEL of the terms and provisions of this Agreement (2) HENKEL's receipt, handling, storage or shipment of Products which conform to the Specifications (3) any errors or omissions in any formula for a Product provided to TSE by HENKEL as herein provided (4) any claim of patent infringement or misappropriation of confidential information with respect to any formula provided by HENKEL to TSE hereunder, or (5) any negligent or willful act or omission of HENKEL, its employees, subcontractors or agents.

(c) For the purposes of any claim or proceeding pursuant to the provisions of this Section 13, TSE shall have the burden of proving that any Product which is the subject of, or which gave rise to, such claim or proceeding met the Specifications thereof.

\* \* \* \* \*

16. Successors and Assigns; Amendment; Entire Agreement. This Agreement and all rights, obligations and liabilities arising hereunder shall be binding upon and inure to the benefit of the Parties' respective successors and assigns. <u>This Agreement may not be modified or amended except by an instrument in writing signed by both the Parties.</u> Any inconsistency of conflict between the terms of this Agreement and any purchase order, invoice or other communication shall be solely governed by the terms of this Agreement. This Agreement is the entire agreement between the Parties hereto with regard to these subject matters hereof and supersedes all prior discussions, arrangements or agreements between the parties relating thereto.

17. Governing Law. This Agreement shall be construed and enforced in accordance with the laws of the State of New Jersey.

*See* Initial Agreement attached hereto as <u>Exhibit A</u> (emphasis added).

45.  The Parties amended the Initial Agreement on November 17, 2016.

46.  The First Amended Agreement only extended the terms of the Initial Agreement (until January 31, 2020) and changed invoicing and payment terms of the contract. *See* First Amended Agreement attached hereto as <u>Exhibit B</u>.

47.  No amendments were made to Paragraph 13 regarding indemnification.

48.     Additionally, Henkel sent TSE its standard terms and conditions with each purchase order submitted to TSE.

49.     The relevant indemnification language does not vary substantially from that contained within the Initial Agreement and holds TSE liable for indemnification for any claims that the subject 798A Adhesive is not merchantable or fit for the particular purposes intended:

> 14.     INDEMNITY AND INSURANCE.  Seller [TSE] hereby indemnifies and holds Buyer [Henkel], its employees, customers, and any other user of the Goods, harmless from all claims or expenses, including, without limitation, reasonable attorneys' fees, which may arise from any property damage, personal injury or death resulting from any purchase, sale, or use of the Goods. . . . If any party purchasing Goods from the Buyer threatens to bring any action or claim, or brings any such action or claim against Buyer asserting that such Goods are not fit or safe for consumer use or are not merchantable or fit for the particular purpose intended, then, in addition to any other remedies which it may have, Buyer . . . . .shall be entitled to recover all expenses incurred in connection with such action or threatened action.

**TSE Undercharged the MDI During The Manufacturing Process**

50.     Upon information and belief, at the time the Defective Batches were produced, TSE utilized an MDI system with several manual operations.

51.     Manual operations require human initiation and direction.

52.     Such manual operations were supposed to be measured and recorded by TSE.

53.     In fact, according to industry standard good manufacturing practices ("GMP"), TSE was required to document the amounts of MDI added to the reactor and at what times the MDI was added during the manufacturing process.

54.     Upon information and belief, no such documentation exists.

55.     On November 22, 2016, during an audit of TSE's plant where the 798A Adhesive was manufactured, Henkel requested supporting documentation to determine the levels of MDI that were added to the two Defective Batches.

56.     TSE failed to provide such documentation.

57.     To date, TSE has failed to provide such documentation.

### Henkel Conducted a Reasonable Investigation into the Root Cause of the Delamination Prior to Demanding Indemnification

58.     After receiving complaints from customers, Henkel began investigating issues with its customers' delaminated side paneling.

59.     Henkel reached out to TSE on several occasions requesting all documentation related to the Defective Batches.

60.     Beginning in July 20, 2016, TSE provided Henkel with certain records related to the Defective Batches.

61.     Henkel analyzed the records TSE provided, tested retains from the Defective Batches, audited TSE's facility, and re-created the batches to simulate the defects of the Defective Batches.

62.     Based on this information, Henkel was able to determine that the delamination was a result of a mischarge of MDI by TSE.  After the delamination was identified, TSE installed a new MDI delivery system to increase automation and reduce human error.

### TSE Could Have Implemented Corrective Measures Prior to the Manufacture and Production of the Defective Batches

63.     Prior to the manufacture of the Defective Batches and the delamination of the side paneling, TSE was in a position to correct the manufacturing issue that caused the Defective Batches.

64.    After manufacture of the Defective Batches, TSE analyzed the possibility that an incorrect number could have been entered into the MDI delivery system.   TSE agreed that there could have been a problem with the Defective Batches if an incorrect amount of MDI were added to them.

65.    As part of TSE's investigation, TSE acknowledged that when Henkel expressly requested a printout of the transaction for each reactor, TSE was unable to deliver them.

66.    As part of TSE's investigation, TSE determined that no MDI measurement records exist.

67.    TSE further investigated the data collection for the MDI shot tank.

68.    TSE also determined that the root cause for the possibility that an incorrect number could be entered into the MDI system was in fact an "Inadequate System."

69.    Again, after the delamination was identified, TSE installed a new MDI delivery system to increase automation and reduce human error.

**TSE's Poor Workmanship**

70.    Additionally, TSE failed to follow proper protocol and industry standard GMP and testing.

71.    For example, during the November 22, 2016 audit, Henkel observed TSE employees failing to follow standard protocols including an instance of one operator who signed off on the shot tank charge to the reactor without watching or verifying the quantity charged.

72.    TSE also failed to keep records that detailed the amount and weight of the MDI charged to the Defective Batches.

73.    TSE also failed to perform industry standard testing on the Defective Batches prior to shipping them to Henkel.

**TSE's Warranties**

74.     TSE agreed to produce the 798A Adhesive per the Initial Agreement and subsequent purchase orders.

75.     This statement became part of the basis of the bargain and, thus, constituted an express warranty of fitness for Henkel's particular purposes and of merchantability.

76.     Henkel's standard terms and conditions state that "the Products [namely, 798A Adhesive] will be of good merchantable quality."

77.     Henkel's standard terms and conditions also state that TSE warrants that "it has the necessary expertise and equipment to manufacture, handle, package and ship the Products."

78.     TSE also provided warranties as set out in the Uniform Commercial Code ("UCC") and under New Jersey law.

79.     TSE manufactured and supplied the same quality of 798A Adhesive to Henkel for years prior to suppling Henkel with the two Defective Batches.

80.     TSE knew or had reason to know the purpose for which the 798A Adhesive was to be used.

81.     Through these prior course of dealings, TSE warranted to provide the same quality of product that it had previously provided.

**TSE'S Breaches of Its Warranties**

82.     Because the 798A Adhesive did not perform as warranted and repeatedly failed, the Defective Batches manufactured by TSE were not suitable to perform as warranted.

83.     TSE is liable for the refund of the full purchase price of the inadequate goods plus any other damages flowing from TSE's breach of warranty.

84.     Henkel promptly gave notice to TSE regarding the Defective Batches in accordance with the agreements and the warranties.

85.     TSE knew or should have known that its failure to engage in industry standard GMP would result in the mischarge of MDI which would cause the 798A Adhesive provided in the Defective Batches to fail to perform as intended and cause resultant business losses to Henkel.

86.     TSE is thus liable for consequential damages including the losses caused by the delamination of the side paneling, testing for root cause analysis, and returns from the customers.

87.     TSE is also liable for Henkel's incidental damages, including the costs of testing the remains and removing, storing, stripping, and replacing the side paneling and other damaged parts of the RVs containing the Defective Batches.

88.     TSE is also liable for all resultant damage.

89.     Henkel has continued to incur losses, expenses and costs as a result of TSE's breaches and refusal to indemnify.

<u>COUNT I</u>
**Breach of Contract**

90.     Henkel reincorporates and realleges all of the allegations contained in paragraphs 1-89 as if fully set forth at length herein.

91.     Henkel entered into a valid and enforceable manufacturing and supply agreement, namely, the Initial Agreement, for the manufacture and supply of 798A Adhesive with TSE.

92.     TSE has breached its contractual obligations by failing to provide Henkel with the customary 798A Adhesive for batch numbers EFD420 and AFD431.

93.     As a result of TSE's breach, Henkel is entitled to a judgment against TSE for an amount in excess of $3,000,000.00, plus interest and attorneys' fees as allowed by law.

WHEREFORE, Henkel prays for judgment as follows:

a)     That the Court enters judgment in favor of Henkel against TSE in the amount in excess of $3,000,000.00, plus all accrued interest thereon;

b)     That the Court awards Henkel post-judgment interest at the statutory rate;

c)     That all costs of this action be assessed against TSE;

d)     That Henkel be awarded its attorneys' fees, costs and expenses; and

e)     That the Court grants Henkel all such other and further relief as the Court deems just and proper.

## COUNT II
### Breach of the Express Warranty of Merchantability

94.     Henkel reincorporates and realleges all of the allegations contained paragraphs 1-89 as if fully set forth at length herein.

95.     The terms and conditions contained in TSE's Initial Agreement specifically provide that all Products will be of good and merchantable quality for the particular purpose intended.

96.     TSE breached this warranty of merchantability by providing Henkel with two Defective Batches of 798A Adhesive, EFD420 and AFD431, that were not of merchantable quality, were not free of all defects and were not fit for the particular purposes intended.

97.     As a direct and proximate result of TSE's breach of its warranty of merchantability, Henkel has suffered significant damages which Henkel is entitled to recover from TSE, for an amount in excess of $3,000,000.00, plus interest and attorneys' fees as allowed by law.

WHEREFORE, Henkel prays for judgment as follows:

a)      That the Court enters judgment in favor of Henkel against TSE in the amount in excess of $3,000,000.00, plus all accrued interest thereon;

b)      That the Court awards Henkel post-judgment interest at the statutory rate;

c)      That all costs of this action be assessed against TSE;

d)      That Henkel be awarded its attorneys' fees, costs and expenses; and

e)      That the Court grants Henkel all such other and further relief as the Court deems just and proper.

### COUNT III
**Breach of Express Warranty of Necessary Expertise and Equipment to Manufacture the 798A Adhesive**

98.      Henkel reincorporates and realleges all of the allegations contained in paragraphs 1-89 as if fully set forth at length herein.

99.      The terms and conditions contained in TSE's Initial Agreement specifically provide that TSE had the necessary expertise and equipment to manufacture, handle, package and ship the Products, including the 798A Adhesive batches EFD420 and AFD431, subject to the Initial Agreement.

100.      TSE breached this express warranty of necessary expertise and equipment to manufacture by providing Henkel with two batches of 798A Adhesive that were not produced with the necessary expertise and equipment to manufacture, that resulted in the short charge of MDI and resulted in defective 798A Adhesive.

101.      As a direct and proximate result of TSE's breach of its warranty of necessary expertise and equipment to manufacture, Henkel has suffered significant damages which Henkel is entitled to recover from TSE, for an amount in excess of $3,000,000.00, plus interest and attorneys' fees as allowed by law.

WHEREFORE, Henkel prays for judgment as follows:

a) That the Court enters judgment in favor of Henkel against TSE in an amount in excess of $3,000,000.00, plus all accrued interest thereon;

b) That the Court awards Henkel post-judgment interest at the statutory rate;

c) That all costs of this action be assessed against TSE;

d) That Henkel be awarded its attorneys' fees, costs and expenses; and

e) That the Court grants Henkel all such other and further relief as the Court deems just and proper.

## COUNT IV
### Breach of Implied Warranty of Merchantability

102. Henkel reincorporates and realleges all of the allegations contained in paragraphs 1-89 as if fully set forth at length herein.

103. TSE contracted to provide Henkel with 798A Adhesive per the terms of the Initial Agreement.

104. TSE performed inspection and testing on the Defective Batches of 798A Adhesive prior to supplying it to Henkel.

105. TSE is a supplier in the direct distributive chain with Henkel's customers, the RV manufacturers. Therefore, the commercial relationship between Henkel and TSE is governed by the Uniform Commercial Code.

106. TSE's status as a merchant that put products into the stream of commerce that were sold in the distributive chain to Henkel and ultimately the RV manufacturers who bought the defective 798A Adhesive from Henkel gives rise to an implied warranty of merchantability under the Uniform Commercial Code.

107.    The Defective Batches manufactured and supplied by TSE for use in securing side paneling to RVs were not fit for the ordinary purposes for which such goods are used in the industry.

108.    TSE breached its implied warranty of merchantability by manufacturing and supplying the Defective Batches that were not fit for the ordinary purposes for which such goods are used in the industry.

109.    As a direct and proximate result of TSE's breach of its warranty of merchantability, Henkel has suffered significant damages which Henkel is entitled to recover from TSE, for an amount of in excess of $3,000,000.00, plus interest and attorneys' fees as allowed by law.

WHEREFORE, Henkel prays for judgment as follows:

a)    That the Court enters judgment in favor of Henkel against Defendant, TSE in an amount in excess of $3,000,000.00, plus all accrued interest thereon;

b)    That the Court awards Henkel post-judgment interest at the statutory rate;

c)    That all costs of this action be assessed against TSE;

d)    That Henkel be awarded its attorneys' fees, costs and expenses; and

e)    That the Court grants Henkel all such other and further relief as the Court deems just and proper.

## COUNT V
**Breach of the Implied Warranty of Fitness for a Particular Purpose**

110.    Henkel reincorporates and realleges all of the allegations contained in paragraphs 1-89 as if fully set forth at length herein.

111.    TSE knew or had reason to know at the time of its contracting with Henkel that the 798A Adhesive would be sold by Henkel that would later sell the products to its RV manufacturer clients who would use the 798A Adhesive to secure side paneling.

112.    TSE knew or had reason to know that TSE and the ultimate purchaser, Henkel and Henkel's clients, were relying on TSE's particular skill and expertise in the manufacture of the 798A Adhesive.

113.    TSE's manufacture and sale of the 798A Adhesive gives rise to an implied warranty of fitness for a particular purpose under the Uniform Commercial Code.

114.    The Defective Batches of 798A Adhesive manufactured and sold by TSE for use in securing side paneling to the RVs were not fit for the particular purposes for which Henkel purchased them.

115.    TSE breached the implied warranty of fitness for a particular purpose by manufacturing and selling Defective Batches of 798A Adhesive that were not fit for the particular purposes for which Henkel purchased them.

116.    As a direct and proximate result of TSE's breach of its implied warranty of fitness for a particular purpose, Henkel has suffered significant damages which Henkel is entitled to recover from TSE, for an amount in access of $3,000,000.00, plus interest and attorneys' fees as allowed by law.

WHEREFORE, Henkel prays for judgment as follows:

    a)    That the Court enters judgment in favor of Henkel against Defendant, TSE in the amount in excess of $3,000,000.00, plus all accrued interest thereon;

    b)    That the Court awards Henkel post-judgment interest at the statutory rate;

    c)    That all costs of this action be assessed against TSE;

d)     That Henkel be awarded its attorneys' fees, costs and expenses; and

e)     That the Court grants Henkel all such other and further relief as the Court deems just and proper.

**COUNT VI**
**Breach of Covenant of Good Faith and Fair Dealing**

117.    Henkel reincorporates and realleges all of the allegations contained in paragraphs 1-89 as if fully set forth at length herein.

118.    By virtue of the contracts entered into between Henkel and TSE, including the Initial Agreement, the First Amended Agreement and Henkel's purchase orders for the 798A Adhesive, an implied covenant of good faith and fair dealing exists between Henkel and TSE.

119.    The implied covenant of good faith and fair dealing required TSE to give Henkel the benefits of the contracts between the parties and to act reasonably and with utmost good faith in the relationship.

120.    TSE has failed to act reasonably and in good faith by, inter alia:

(a)    Failing to provide Henkel with 798A Adhesive in the Defective Batches that complied with GMP or that performed as warranted;

(b)    Failing to indemnify Henkel for the monies paid out to its customers as a result of the Defective Batches; and

(c)    Requiring that Henkel pay for testing and analysis of the retains. TSE's actions have violated the parties' mutual obligation to cooperate, denied Henkel of the fruits of their contracts, and breached the good-faith covenant inherent in the contracts between Henkel and TSE.

121.    As a direct and proximate result of the aforesaid breach, Henkel has suffered significant damages which Henkel is entitled to recover from TSE, for an amount in excess of $3,000,000.00, plus interest and attorneys' fees as allowed by law.

WHEREFORE, Henkel prays for judgment as follows:

a)    That the Court enters judgment in favor of Henkel against Defendant, TSE in the amount in excess of $3,000,000.00 plus all accrued interest thereon;

b)    That the Court awards Henkel post-judgment interest at the statutory rate;

c)    That all costs of this action be assessed against TSE;

d)    That Henkel be awarded its attorneys' fees, costs and expenses; and

e)    That the Court grants Henkel all such other and further relief as the Court deems just and proper.

## COUNT VII
### Contractual Indemnity

122.    Henkel reincorporates and realleges all of the allegations contained in paragraphs 1-89 as if fully set forth at length herein.

123.    Henkel entered into a valid and enforceable manufacturing and supply agreement namely, the Initial Agreement, for the manufacture and supply of 798A Adhesive with TSE.

124.    Pursuant to the Initial Agreement and supplemental Purchase Orders, TSE is obligated to indemnify, hold harmless, and defend Henkel for any claims, suits, losses, damages, costs, expenses and attorneys' fees resulting from any negligent or willful act or omission of TSE, its employees, subcontractors or agents, or  a combination of both.

125.    Negligence by TSE or any breach of any of these failures of either the express warranties pursuant to the Initial Agreement and/or implied warranties under general contract

19

principles constitutes a breach of the Initial Agreement which triggers the indemnification provisions of Paragraph 13 in the Initial Agreement.

126.    Henkel is informed and believes, and thereon alleges that the delamination claims and resulting damages arise from TSE's breach of the Initial Agreement and several warranties.

127.    By reason of the foregoing, Henkel has an express right of indemnity against TSE.  TSE owes Henkel a duty to hold Henkel harmless from any and all liabilities arising from TSE's breach of contract, including the facts and circumstances which gave rise to the delamination claims.  Further, TSE owes Henkel for its costs and expenses incurred in testing, investigating, defending and resolving the delamination claims, including the cost of reasonable attorneys' fees incurred in pursuing Henkel's right to indemnity against TSE.

128.    Henkel has been damaged by reason of the aforesaid costs and expenses in a sum not presently known to Henkel at this time, but not less than $3,000,000.00.  Henkel will seek leave to amend this Complaint to assert the true amount of damages when the same can be ascertained.

WHEREFORE, Henkel prays for judgment as follows:

a)    That the Court enters judgment in favor of Henkel against Defendant, TSE in the amount of the true amount of damages which are at least $3,000,000.00, plus all accrued interest thereon;

b)    That the Court awards Henkel post-judgment interest at the statutory rate;

c)    That all costs of this action be assessed against TSE;

d)    That Henkel be awarded its attorneys' fees, costs and expenses; and

e)    That the Court grants Henkel all such other and further relief as the

Court deems just and proper.

Respectfully submitted, this 10th day of July 2020.

 /s/David M. Hawthorne_____          /s/Jennifer Manso_____
David M. Hawthorne                   Jennifer Manso
Florida Bar Number: 935174           Florida Bar Number: 121099
Attorneys for Plaintiff              Attorneys for Plaintiff
Email:                               Email:
David.Hawthorne@lewisbrisbois.com    Jennifer.Manso@lewisbrisbois.com
Lewis Brisbois Bisgaard & Smith LLP  Lewis Brisbois Bisgaard & Smith LLP
110 S.E. 6th Street, suite 2600      401 E. Jackson Street, Suite 3400
Ft. Lauderdale, Florida 33301        Tampa, Florida 32306
Telephone: 954.828.0376             Telephone: 813.739.1900
Facsimile:  954.728.1282            Facsimile:  813.739.1900